UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TABATHA L. CONRAD, | ) |
| | ) |
|    Plaintiff(s), | ) |
| | ) |
| v. | )   Case No. 2:21-cv-00009-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration[1], | ) |
| | ) |
|    Defendant(s). | ) |

**Memorandum and Order**

Tabatha Conrad suffers from fibromyalgia, endometriosis, bipolar disorder with depression, anxiety, and other medical conditions, and no doubt faces significant obstacles in both her work and personal life. She requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II, 42 U.S.C. §§ 401–434, and her application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381–1385, of the Social Security Act. The Court affirms the Commissioner's decision.

**I.   Procedural history**

Conrad filed a Title II application for disability benefits on January 16, 2019, Tr. 12, 233–34, and a Title XVI application for supplemental security income on that same date. Tr. 12, 235–40. The Social Security Administration initially denied her application on May 2, 2019, deciding that she was not disabled. Tr. 12, 114–19. On May 23, 2019, Conrad requested a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hearing before an Administrative Law Judge. Tr. 12, 120–21. The ALJ held the hearing via telephone on April 10, 2020, due to the COVID-19 pandemic. Tr. 12, 30–73. After the hearing, the ALJ denied Conrad's application in a decision dated June 1, 2020. Tr. 9–28. On December 23, 2020, the Appeals Council denied Conrad's request for review. Tr. 1–4. Thus, the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

## II. Decision of the ALJ

The ALJ concluded that Conrad had "not been under a disability within the meaning of the Social Security Act from November 18, 2018, through the date of [the ALJ's] decision." Tr. 13. While the ALJ noted that Conrad met the Social Security Act's requirements for insured status, the ALJ determined that Conrad had not engaged in substantial gainful activity since her alleged onset date of November 18, 2018. Tr. 14. The ALJ found that Conrad had severe impairments—including "fibromyalgia, bipolar disorder with depression, anxiety, multiple ovarian cysts, and endometriosis, now status [sic] post hysterectomy"—significantly limiting her ability to perform basic work activities. Tr. 14. The ALJ also identified other, non-severe impairments. Tr. 14–15. The ALJ found that Conrad did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15.

The ALJ also assessed a residual functional capacity (RFC) to perform light work under 20 C.F.R. § 404.1567(b). Tr. 17. *See* 20 C.F.R. §§ 404.1529, 416.929. After reviewing the record—including medical opinions and prior administrative medical findings—the ALJ noted that Conrad was able "to perform light work as defined in [20 C.F.R. § 404.1567(b)] except: [Conrad] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but

2

can never climb ladders, ropes or scaffolds." Tr. 17.  Additionally, the ALJ found that Conrad "can never work at unprotected heights or around moving mechanical parts." Tr. 17.  The ALJ found that Conrad "is able to perform simple, routine, and repetitive tasks in an environment with minimal changes in setting or duties" and "is able to interact with coworkers, supervisors, and the public occasionally." Tr. 17.

The ALJ found that given her RFC, Conrad was unable to perform any past relevant work as an accounts receivable clerk, sandblaster, printing machine operator, or product inspector.  Tr. 23.  After considering the vocational expert's testimony and Conrad's age, education, past work experience, and RFC, the ALJ found that Conrad can perform jobs that exist in significant numbers in the national economy.  Tr. 23.  Thus, the ALJ concluded that Conrad was not under a disability from November 18, 2018, through the date of the ALJ's decision.  Tr. 24.  The ALJ denied Conrad's application for disability insurance benefits and application for supplemental security income.  Tr. 24.

Conrad appeals, arguing that the ALJ did not analyze the treating psychiatrist's opinion correctly, Doc. 19 at pp. 7–13, and that the ALJ's RFC finding was not supported by the weight of the evidence, *id.* at pp. 13–14.

### III.    Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

3

any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can adjust to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot adjust to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is

5

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).  The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

**IV.   Discussion**

Conrad argues that the Court should remand for two reasons.  Doc. 19.  First, Conrad argues that the ALJ did not analyze the treating psychiatrist's opinion correctly under 20 C.F.R. § 404.1520.  *Id.* at pp. 7–13.  Second, Conrad argues that the ALJ's RFC assessment is not supported by the weight of the evidence.  *Id.* at pp. 13–14.

    **A.**    **The ALJ appropriately assessed the treating psychiatrist's opinion under 20 C.F.R. § 404.1520.**

Conrad argues that the ALJ erred by not giving sufficient weight to the opinion of her treating physician, Dr. Spalding. *Id.* at pp. 7–13.  Conrad argues that her treating psychiatrist's opinion was the only one in the record that considered all the medical evidence, and that because the other medical findings were from the application stage, they did not "encompass the

6

penumbra of medical problems facing the plaintiff." *Id.* at pp. 7–8. She argues that "the record as a whole supports Dr. Spalding's opinion and the ALJ's rejection of it is in error." *Id.* at p. 9.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. §§ 404.1513, 416.9133(a)(2). ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 404.1520c(a). ALJs must explain how they considered the factors of supportability and consistency in their decisions but need not explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2); *see also Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021). The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1); *see Starman v. Kijakazi*, No. 20-cv-00035-SRC, 2021 WL 4459729, at *3 (E.D. Mo. Sept. 29, 2021).

Although Conrad argues that Dr. Bucklew and Dr. Tsuchdin's administrative medical findings, Tr. 74–109, were from the application stage and failed to account for subsequent developments, the ALJ properly found that those opinions were persuasive because they were consistent with the medical evidence as a whole. Tr. 21; *see Adamczyk v. Saul*, 817 F. App'x

7

287, 290 (8th Cir. 2020) (citing *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006)) (finding that opinions of nonexamining, reviewing psychologists were consistent with evidence that arose after those psychologists wrote their opinions). Further, Conrad does not point out any "subsequent medical evidence" inconsistent with Dr. Bucklew and Dr. Tsuchdin's opinions. Doc. 19 at pp. 7–8.

On the other hand, the ALJ found Dr. Spalding's opinion partially persuasive. Tr. 22. As noted by the ALJ, treatment provider Dr. Spalding opined that Conrad "had moderate limitations in understanding, remembering, and carrying out simple instructions" and had "marked limitations in understanding, remembering, and carrying out complex decisions" and "in interacting with others." Tr. 21. Dr. Spalding estimated that Conrad "would miss more than 4 days a month of work and be off-task 25% or more of the time" and "would need unscheduled breaks two or three times a month" as well as "one to three days before returning to work." Tr. 21–22.

Regarding the supportability factor, the ALJ found that the medical evidence did support difficulties with complex tasks, due to Conrad's "distractibility and reported issues with concentration," and "some social limitations due to crankiness and isolation." Tr. 22. However, the ALJ found that the medical evidence did "not support marked limitations in any area of functioning." Tr. 22. Regarding the consistency factor, the ALJ found that the evidence showed Conrad "got along with her treatment providers and had no reported issues interacting with her children or family." Tr. 22. The ALJ noted that Conrad continued to live with her boyfriend as a roommate after they broke up. Tr. 22. And the ALJ found "no evidence to support off-task behavior due to panic attacks," noting that panic attacks were "rarely mentioned" in Conrad's medical record. Tr. 22. Further, the ALJ found that while Conrad's occasional tearfulness when

8

seeing medical providers was "not to the point that it would interfere with work functioning." Tr. 22.

Conrad argues that the current regulations, which require ALJ's to evaluate opinion evidence, are "illogical and unfair" because "ALJs are lay people without medical training" required to "form opinions as to how long people can sit, stand, walk, lift, carry, etc." Doc 19 at p. 13. But whatever Conrad may think of the current regulations, the ALJ was not free to disregard them. *See* 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); 20 C.F.R. § 498.204(c)(1) ("The ALJ does not have the authority to . . . [f]ind invalid or refuse to follow Federal statutes or regulations, or delegations of authority from the Commissioner . . . .").

Conrad also argues that the ALJ was "playing doctor" when evaluating Dr. Spalding's opinion. Doc. 19 at pp. 10–11. Conrad is correct that an "ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own." *Adamczyk*, 817 F. App'x at 289 (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009) ("[T]he ALJ's determination [that the claimant's] medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law."); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) ("An administrative law judge may not draw upon his own inferences from medical reports.")). However, "[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Id.* (quoting *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016)).

Here, the ALJ was not "clearly playing doctor" or "simply playing psychiatrist," as Conrad claims. Doc. 19 at p. 10–11. Rather, in finding Dr. Spalding's opinion only partially

9

persuasive, the ALJ acceptably pointed out why she concluded that the doctor's opinion was only partially supported by, and partially consistent with, the record. Tr. 21–22; *see* 20 C.F.R. § 404.1520c.

Substantial evidence supports the ALJ's findings, and Conrad's "contentions that the ALJ should have weighed these facts differently or drawn different conclusions do not warrant relief under [the Court's] deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). In sum, the ALJ properly considered the supportability and consistency factors in finding Dr. Spalding's opinion only partially persuasive, and substantial evidence supports this finding.

The Court notes that even if it found substantial medical evidence in the record supporting Dr. Spalding's opinion, it cannot remand simply because the Court "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). Rather, the Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted). Here, for the reasons outlined above, the ALJ properly found that parts of Dr. Spalding's medical opinion lacked support and were inconsistent with the record, and substantial evidence supports the ALJ's finding. Because such a finding "falls within the available zone of choice," *id.*, the ALJ permissibly found the opinion only partially persuasive.

B.      **Substantial evidence supports the ALJ's RFC finding.**

Federal regulations define RFC as the most a claimant can still do despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). And "[t]he Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1). Here, the ALJ properly considered all the relevant evidence in reaching her RFC determination.

Conrad claims that the ALJ erred by finding that Conrad "can do light work and is limited to simple, routine repetitive tasks with no close interaction with the public or co-workers." Doc. 19 at p. 13 (citing Tr. 17). Conrad argues that "[t]he ALJ is not a physician and cannot just reject opinion evidence out of hand" and that "the ALJ is not medically trained and is not supposed to be making medical conclusions." *Id.* Specifically, Conrad claims the ALJ erred by: (1) concluding (after acknowledging Conrad's testimony) that Conrad's description of the extent of her symptoms is "not entirely consistent with the medical evidence"; (2) giving Dr. Spalding's opinion too little weight; and (3) not adequately considering Conrad's "continual treatment for her pelvic pain, ovarian cysts, kidney stones, neck and back pain . . . along with pain medication of hydrocodone . . . ." *Id.* at pp. 13–14.

The ALJ began her RFC determination by assessing Conrad's subjective complaints. Tr. 17. In her testimony in front of the ALJ and in forms submitted as part of her applications for benefits, Conrad claimed disability due to fibromyalgia, endometriosis, bipolar disorder, depression, learning disability, MRSA, cysts, irritable bowel syndrome, restless leg syndrome, and panic attacks. Tr. 255, 276–86.

11

In her application paperwork, Conrad claimed that bad flares with fibromyalgia caused her to spend all day lying down. Tr. 276. She stated that she had panic attacks and depression, and that the pain, depression, and anxiety made it hard for her to concentrate. Tr. 276. She claimed that the pain and her mind keep her awake, and that three to four days a week she spent "pretty much" the entire day lying down. *Id.* She said she spent an hour or two lying down on the remaining days. *Id.* Due to her pain, she reported difficulty dressing, bathing, caring for her hair, shaving, and feeding herself, and said that her children help take care of her and her family monitors her medicines. Tr. 277–78. On good days, she stated that she makes sandwiches or uses the microwave to prepare food, and performs light chores, which take a long time. Tr. 278.

In her application, she also claimed to go outside once or twice a week, and stated that she can drive on good days, and frequently uses the electric cart at the store. *Id.* She stated that she lives with her kids and boyfriend but is unable to interact with them some days. Tr. 280. She reported mood swings and stated that her pain makes her cranky, and that she doesn't enjoy people like she used to. *Id.* She claimed she is unable to lift much due to the pain it causes. Tr. 281. She reported being able to walk for 100 yards before needing to lie down for 15 minutes. *Id.* She stated she could not pay attention for long periods, depending on the subject, and reported some issues with written and spoken instructions. *Id.* She stated that she doesn't handle stress or changes in routine very well, and claimed she can't sleep, and never knows what her day is going to be like. Tr. 282. She reported that her medications make her dizzy and tired. *Id.*

In her decision, the ALJ summarized Conrad's testimony at the hearing on April 10, 2020, as follows:

> [Conrad] testified that she lived with her children, aged 5 and 16, and her mother. She stated her mother took her younger child to school and helped with her children. She stated that she had sharp pain from head to toe that hurt more with activity. She said that she had pain three to four times a day for an hour or two. She reported

> numbness and coldness in her hands. She said she dropped things two to three times a day. She stated she had manic episodes a few times a month. She stated that, after a manic phase, she felt drained and stayed in a dark room. She said during her depressed phase, she did not want to be around people. She stated she could not remember to talk to people. She said she had crying spells and mood swings. She stated she had anxiety when close to people and anger outbursts in public two to three times a month. She also reported episodes of feeling anxious with chest pain and loss of breath that happened two to 10 times a day. She reported panic attacks occurring about three times a week for an hour at a time. She reported feeling tired and sick. She stated she napped for six to eight hours. She also reported headaches occurring two to three times a day for two hours. She stated that she fell two to three times a month. She stated that someone else did the grocery shopping but she shopped once or twice a month, leaning on the grocery cart. She said she could drive for up to 15 miles. She reported lying on a heating pad for 30 to 60 minutes at a time.

Tr. 18; *see also* Tr. 36–72.

"ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Here, the ALJ concluded that while Conrad's "medically determinable impairments" could reasonably cause her reported symptoms, Conrad's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 18. Specifically, the ALJ found that the evidence did not support Conrad's claims of: (1) multiple panic attacks and multiple headaches each day; (2) mood swings; (3) crying spells; (4) poor memory; (5) manic phases two to three weeks a month; (6) frequent falls; (7) a need to elevate her legs due to weakness; (8) pain and fatigue severe enough to necessitate lying down or napping throughout the day. *Id.* The ALJ found no evidence in the record supported Conrad's "testimony that she laid down for several hours a day, elevated her legs due to fatigue or pain, or suffered falls, headaches, or dropped things frequently due to numbness and tingling in her hands," and found her physical examinations "generally normal." *Id.*

13

Regarding mental limitations, the ALJ observed that Conrad's treatment records "overwhelmingly showed normal mental status examinations but for a depressed mood, anxiety, or a constricted affect," and noted that Conrad's one hospitalization for mental health issues occurred "during a time when she was off her medications." Tr. 22–23.  As the ALJ noted, Conrad's treatment records indicated "her bipolar disorder, anxiety, and mood were stable with medications" and did not indicate "she reported panic attacks to her treatment providers." Tr. 23. The ALJ found no evidence in the medical records of witnessed and documented panic attacks, no evidence of documented manic episodes, and no evidence of Conrad spending days in her room with spells of depression.  *Id.*  The ALJ concluded that "[t]he medical evidence did not document the reported severity of symptoms that [Conrad] alleged." *Id.*

Conrad argues that "[t]he ALJ is not a physician and cannot just reject opinion evidence out of hand; the ALJ is not medically trained and is not supposed to be making medical conclusions." Doc. 19 at p. 13.  But this ignores the fact that federal regulations require the ALJ to evaluate "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [the claimant's] ability to work." 20 C.F.R. §§ 404.1529, 416.929; *see also Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002) (stating that "an ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary").  In other words, the law commits these determinations to ALJs, and here, the ALJ did precisely what the law requires.  Tr. 17–18.

"Credibility determinations are the province of the ALJ," and the Court "defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's

14

evaluation of credibility.'" *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)); *see also Nash*, 907 F.3d at 1090 ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Here, the ALJ permissibly discounted Conrad's testimony about the extent of her symptoms, based on the inconsistency of Conrad's testimony compared to the medical records in the case. For the reasons stated above, the Court finds that the ALJ's credibility determination of Conrad's subjective complaints is "supported by good reasons and substantial evidence." *Julin*, 826 F.3d at 1086.

Repeating earlier arguments, Conrad also contends that the ALJ is "not capable of forming diagnoses or assessing the limitations they impose," and that "if the ALJ had given Dr. Spalding's opinion the proper analysis, [Conrad] would miss too much work or be off task too much to sustain competitive employment as the [vocational expert] testified." Doc. 19 at p. 13 (citing Tr. 67–68). However, as explained above in Section A, substantial evidence supports the ALJ's conclusions regarding Dr. Spalding's opinion. *Adamczyk*, 817 F. App'x at 289 ("The interpretation of physicians' findings is a factual matter left to the ALJ's authority." (quoting *Mabry*, 815 F.3d at 391)).

Last, Conrad argues that when formulating the RFC, the ALJ did not adequately consider Conrad's "continual treatment for her pelvic pain, ovarian cysts, kidney stones, neck and back pain . . . along with pain medication of hydrocodone." Doc. 19 at p. 14. Conrad claims that those considerations, along with her mental health problems, "would prevent her from holding down a 40-hour week." *Id.* But this argument lacks merit, because the question the Court must decide is not whether Conrad, or the Court, would weigh the evidence differently—it is whether

15

the ALJ followed applicable law and regulations and whether substantial evidence in the record as a whole supports the ALJ's findings.

Consistent with the Eighth Circuit's instructions, the ALJ determined Conrad's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney*, 228 F.3d at 863). In addition to the ALJ's analysis of the medical opinions and Conrad's own description of her limitations, the ALJ noted that while treatment records showed tenderness of the whole spine at times, at other times records showed no tenderness of the spine, and no joint tenderness or swelling, as well as no reduction in range of motion. Tr. 22. The ALJ also noted that Conrad received conservative treatment through pain medication and infusions. *Id.* The ALJ observed that according to the medical records, Conrad's fibromyalgia appeared stable with medication and was not worsening. *Id.*

Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC limiting Conrad to simple, routine, and repetitive tasks in an environment with minimal changes in setting or duties, and only occasional interaction with others.

V.     **Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, the Court affirms the ALJ's decision.

Accordingly, the Court dismisses Conrad's [1] Complaint with prejudice. A separate judgment accompanies this Memorandum and Order. The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant.

So Ordered this 15th day of February 2022.

_SL R. CR_
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE